1   Paul R. Kiesel, Esq. (SBN 119854)
    Helen Zukin, Esq. (SBN 117933)
2   KIESEL BOUCHER LARSON LLP
    8648 Wilshire Boulevard
3   Beverly Hills, California 90211
    Telephone: (310) 854-4444
4   Facsimile : (310) 854-0812

5   Attorneys for Plaintiff
    MARY THOMPSON

6

7

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10

11  MARY THOMPSON, an individual,        )   **CASE NO.  2:10-cv-08089-PSG -JEM**
                                         )
12                      Plaintiff,       )
                                         )
            vs.                          )
13                                       )   **DECLARATION OF HELEN**
    ZIMMER, INC., a Delaware             )   **ZUKIN, ESQ. IN SUPPORT OF**
14  Corporation; ZIMMER-COOK             )   **PLAINTIFF'S MOTION TO**
    ASSOCIATES, a California Corporation;)   **REMAND**
15  and DOES 1 through 50, inclusive,    )
                                         )
16                                       )   Judge:      Hon. Philip S. Gutierrez
                        Defendants.      )   Date:       December 13, 2010
17                                       )   Time:       1:30 p.m.
                                         )   Place:      Courtroom 880
18                                       )
                                         )
19                                       )   [*Filed concurrently with Plaintiff's*
                                         )   *Motion to Remand; and Proposed Order*
20                                       )   *Granting Plaintiff's Motion to Remand*]
                                         )
21                                       )
                                         )
22                                       )
                                         )
23  _____  )

24

25

26

27

28

-1-

## DECLARATION OF HELEN ZUKIN

I, HELEN ZUKIN, declare as follows:

1.      I am an attorney duly licensed to practice law in all courts of the State of California.  I am a partner with the law firm KIESEL BOUCHER LARSON LLP, counsel for plaintiff herein.  I have personal knowledge of the matters set forth herein, and if called upon to testify I would be competent to do so under oath.

2.      Plaintiff served the Summons and Complaint upon Defendant Zimmer, Inc. on October 6, 2010.  Defendant Zimmer-Cook Associates was also served the Summons and Complaint on October 6, 2010.  Zimmer, Inc. removed this matter on October 27, 2010.

3.      On November 3, 2010, the parties engaged in a pre-filing conference pursuant to Local Rule 7-3.  Counsel were unable to reach a resolution.  Due to the immediacy of this request, this Motion to Remand was filed prior to the expiration of the ten (10) days required by Local Rule 7-3.

4.      Attached hereto as Exhibit A is a true and correct copy of the Hon. Dale S. Fischer's November 4, 2009, Order Granting Plaintiffs' Motion to Remand in *Milla, et al. v. Zimmer, Inc., et al.,* C.D. Cal. Case No. 09-cv-6432.

5.      Attached hereto as Exhibit B is a true and correct copy of the Hon. Dennis L. Beck's May 29, 2009, Order Granting Plaintiffs' Motion to Remand Action in *Lyles v. Zimmer, Inc., et al.,* E.D. Cal. Case No. 09-cv-0479.

6.      Attached hereto as Exhibit C is a true and correct copy of the Hon. Dennis L. Beck's May 29, 2009, Order Granting Plaintiffs' Motion to Remand Action in *Hinds v. Zimmer, Inc., et al.,* E.D. Cal. Case No. 09-cv-0442.

7.      Attached hereto as Exhibit D is a true and correct copy of the Hon. Lee Yeakel's May 21, 2009, Order granting plaintiffs' Motion to Remand in *Rickman v. Zimmer US, Inc., et al.,* W.D. Tex. Case No. A-08-CA-860-LY.

8.    Attached hereto as Exhibit E is a true and correct copy of the Zimmer-Cook Associates homepage, entitled "Zimmer Distributor Home," as accessed on November 5, 2010.  The page showcases the Zimmer, Inc. logo, links directly to Zimmer, Inc.'s website, and promotes Zimmer, Inc.'s products.

9.  Attached hereto as Exhibit F is a true and correct copy of the Zimmer-Cook webpage promoting The Zimmer Institute, "Zimmer's premier center for surgeon training," as accessed on November 5, 2010.

10.  Attached hereto as Exhibit G is a true and correct copy of the Zimmer-Cook webpage "Patient Educational Materials," as accessed on November 5, 2010. Through this page, patients and caregivers can request informational brochures on Zimmer's products.

11.  Attached hereto as Exhibit H is a true and correct copy of the Zimmer, Inc. homepage, as accessed on November 5, 2010.

12.  Attached hereto as Exhibit I is a true and correct copy of the "Distributor Profile" for Zimmer-Cook, accessed from Zimmer, Inc.'s "Contact Us" link.  Gary Cook of Zimmer-Cook Associates has his primary email address with Zimmer, Inc.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 5th day of November, 2010, in Beverly Hills, California.

Helen Zukin
Declarant

# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

JS 6

| | | | |
|---|---|---|---|
| Case No. | CV 09-6432 DSF (SSx) | Date | 11/4/09 |
| Title | Angel Milla, et al. v. Zimmer, Inc., et al. | | |

| Present: The Honorable | DALE S. FISCHER, United States District Judge | |
|---|---|---|
| Debra Plato | | Not Present |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**    (In Chambers) Order GRANTING Plaintiffs' Motion to Remand (Docket No. 13)

# I. INTRODUCTION

On July 29, 2009, Plaintiffs filed their state court complaint for negligence, strict products liability, breach of warranty, and loss of consortium. (Notice of Removal, Ex. A.) Defendants removed the case on the basis of diversity jurisdiction, alleging that Defendant Zimmer-Cook Associates, Inc., the only nondiverse party, was fraudulently joined. (Id. ¶ 18.)

Plaintiffs moved for remand. The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. The hearing set for November 9, 2009, is removed from the Court's calendar. Because Defendants failed to present admissible evidence that Zimmer-Cook was fraudulently joined, Defendants have not established that complete diversity exists, and the case must be remanded to state court.

# II. FACTUAL BACKGROUND

Plaintiffs seek to hold Zimmer-Cook strictly liable as the distributor of the allegedly defective product. (See Notice of Removal, Ex. A ¶ 13.) Defendants assert that Zimmer-Cook, though a distributor of the product in some geographical areas, did

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

JS 6

not distribute the product at issue in this suit.  (Id. ¶¶ 23-25.)  To support this assertion, Defendants provide what they describe as the "Affidavit of Gary Cook," owner of Zimmer-Cook.  (Id., Ex. D.)  Plaintiffs' motion does not directly address whether Zimmer-Cook was the relevant distributor; rather, Plaintiffs contend they have stated a state law cause of action against Zimmer-Cook despite Zimmer-Cook's claim that it has no connection to the controversy.  (Motion to Remand at 4-5.)

## III.  DISCUSSION

Joinder is fraudulent where it is obvious under settled state law that the plaintiff cannot make out a cause of action against the defendant.  McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987).  That an action against the defendant is likely to be dismissed does not establish fraudulent joinder.  Dodson v. Spiliada Maritime Corp., 951 F.2d 40, 42-43 (5th Cir. 1992).  The standard is not "whether the plaintiff will actually or even probably prevail on the merits," but whether there is a "possibility" he may do so.  Id. at 42.

The removal statute is strictly construed against removal jurisdiction, and any doubt is resolved in favor of remand.  Boggs v. Lewis, 863 F.2d 662, 663 (9th Cir. 1988).  The removing party is entitled to present facts showing fraudulent joinder, McCabe, 811 F.2d at 1336, and the court may go beyond the pleadings and consider summary judgment-type evidence such as affidavits or deposition testimony, Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1068 (9th Cir. 2001) (quoting Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 263 (5th Cir. 1995)); Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998).

It is a settled matter of California law that all the participants in the chain of distribution of a defective product may be held strictly liable.  Bostick v. Flex Equip. Co., Inc., 147 Cal. App. 4th 80, 88 (2007).  Zimmer-Cook attempts to present evidence that it was not the distributor of the product at issue by submitting a purported affidavit.

An affidavit is a "voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths, such as a notary public."  Black's Law Dictionary (8th ed. 2004).  In general, matters that may be supported by an affidavit may be equally supported by an unsworn written declaration made under penalty of perjury.  28 U.S.C. § 1746.

Because Gary Cook's written statement indicates neither that it was sworn nor that it was made under penalty of perjury, it is not an affidavit and does not constitute

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

JS 6

evidence before the Court.  Having presented no legitimate evidence that Zimmer-Cook was not the distributor of the product, Defendants have failed to demonstrate that it is obvious Plaintiffs cannot bring a claim against Zimmer-Cook under California law. Fraudulent joinder has not been established.

### IV.  CONCLUSION

Because Zimmer-Cook was not fraudulently joined, complete diversity does not exist, and the Court does not have jurisdiction under 28 U.S.C. § 1332.  The case must be remanded to state court.

The motion to remand is GRANTED.  The case is REMANDED to the Superior Court of California, County of Los Angeles.

IT IS SO ORDERED.

# EXHIBIT B

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

KATHLEEN LYLES AND
GARY LYLES,

                        Plaintiff,

         v.

ZIMMER, INC., et al.,

                        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

1:09cv0479 OWW DLB

ORDER GRANTING PLAINTIFF'S
MOTION TO REMAND ACTION
(Document 11)

        On April 7, 2009, Plaintiffs Kathleen Lyles and Gary Lyles ("Plaintiffs") filed the instant Motion to Remand to State Court.  The matter was heard on May 8, 2009, before the Honorable Dennis L. Beck, United States Magistrate Judge.  Matthew Faulkner appeared on behalf of Plaintiffs.  Michelle Fujimoto appeared telephonically on behalf of Defendants Zimmer, Inc. ("Zimmer") and Zimmer-Cook Associates, Inc. ("Zimmer-Cook").

## **BACKGROUND**

        Plaintiffs filed this product liability action against Zimmer and Zimmer-Cook in the Kern County Superior Court on December 5, 2008.  Plaintiffs allege negligence, *res ipsa loquitur*, breach of express and implied warranties, strict liability and loss of consortium for injuries suffered by Kathleen Lyles after she underwent a total hip replacement on December 5, 2006, using the Durom Hip Resurfacing System ("Durom Cup") manufactured by Zimmer.

        Defendants Zimmer and Zimmer-Cook answered the complaint on March 11, 2009.

1

1    On March 12, 2009, Defendants removed the action to this Court based on complete

2    diversity of properly joined parties.  Defendants contend that Zimmer-Cook is a sham defendant

3    whose citizenship should be disregarded.

4    Plaintiffs filed the instant motion for remand on April 7, 2009, arguing that Zimmer-Cook

5    is a distributor of the Durom Cup and is properly named under California tort law.[1]  Plaintiffs

6    also request costs and attorneys' fees in the amount of $3,000.00 for defending against removal.

7    Defendants opposed the motion on April 24, 2009.  Plaintiffs filed their reply on April 28,

8    2009.  On May 1, 2009, Defendants filed objections to evidence offered by Plaintiffs in their

9    reply.

10   **FACTUAL BACKGROUND**

11   According to the complaint, Zimmer is a Delaware corporation with its principal place of

12   business in Indiana.  Zimmer-Cook is a domestic corporation in California with its principal

13   place of business in San Francisco.  Plaintiffs reside in Kern County, California.

14   Plaintiff Kathleen Lyles underwent hip replacement surgery on December 5, 2006, during

15   which Dr. James Grimes implanted the Durom Cup.  Plaintiffs allege that Zimmer manufactured

16   the Durom Cup and that Zimmer-Cook distributed, supplied and sold the Durom Cup.  During

17   the surgery, Roger Probasco, a sales representative of Zimmer-Cook, was present "to assure

18   proper placement and implantation techniques of the [Durom Cup]."  Complaint, p. 5.

19   Following the surgery, Plaintiff Kathleen Lyles had persistent pain in the groin,

20   particularly noted when bending forward.  On March 31, 2009, Dr. Grimes diagnosed Ms. Lyles

21   with a failed total hip arthroplasty, which required a revision right total hip arthroplasty.  On

22   April 1, 2008, Ms. Lyles underwent a revision of right total hip arthroplasty.  Plaintiffs allege that

23   as a direct and proximate result of Defendants Zimmer and Zimmer-Cook placing the defective

24   product into the stream of commerce, Plaintiff Kathleen Lyles suffered and continues to suffer

25   injuries and damages.

26   Plaintiffs allege causes of action against Defendants for (1) negligence (failure to warn);

27

28   [1]A related motion to remand is pending in Hinds v. Zimmer, Inc., 1:09cv0442 AWI DLB.

2

1   (2) *res ipsa loquitur*; (3) breach of express warranty; (4) breach of implied warranty; (5) strict

2   products liability; and (6) loss of consortium by Plaintiff Gary Lyles.

3                                        **DISCUSSION**

4            Defendants argue that Plaintiffs fraudulently joined Zimmer-Cook to destroy diversity

5   and that Zimmer-Cook is simply a service provider that facilitated the delivery of the Durom Cup

6   to Dr. Grimes.  Plaintiffs counter that Zimmer-Cook is a distributor of the Durom Cup and

7   distributors are proper defendants in products liability cases.

8   A.       Removal Jurisdiction

9   _____By statute "any civil action brought in a State court of which the district courts of the

10  United States have original jurisdiction, may be removed by the defendant or the defendants, to

11  the district court of the United States for the district and division embracing the place where such

12  action is pending."  28 U.S.C. § 1441(a).  The party seeking to invoke federal jurisdiction bears

13  the burden of establishing jurisdiction.  See Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090,

14  1092 (9th Cir. 1990).

15  B.       Fraudulent Joinder

16           "The joinder of a nondiverse defendant is fraudulent or a 'sham' and does not defeat

17  jurisdiction if the plaintiff fails to state a cause of action against the defendant, and the failure is

18  obvious according to the settled rules of the state."  Soo v. United Parcel Serv., Inc., 73 F.Supp.2d

19  1126, 1128 (N.D.Cal. 1999) (citing McCabe v. General Foods Corp., 811 F.2d 1336, 1339 (9th

20  Cir. 1987) ("fraudulent joinder is a term of art")); see Ritchey v. Upjohn Drug Co., 139 F.3d

21  1313, 1318 (9th Cir. 1998) (noting that a defendant must show that "the individuals joined in the

22  action cannot be liable on any theory" or that the resident defendant had "no real connection with

23  the controversy"), cert. denied, 525 U.S. 963 (1998).

24           A party is deemed to have been joined fraudulently if, "after all disputed questions of fact

25  and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff

26  could not possibly recover against the party whose joinder is questioned."  Kalawe v. KFC Nat'l

27  Management Co., 1991 WL 338566, *2 (D.Haw. 1991) (citing Kruso v. International Telephone

28  & Telegraph Corp., 872 F.2d 1416, 1426 (9th Cir. 1989), cert. denied, 496 U.S. 937 (1990)).  If a

1   defendant claims that other defendants were fraudulently joined, then the court may go beyond

2   the pleadings to examine facts showing the joinder is fraudulent.  See Ritchey, 139 F.3d at 1318.

3   "If there is a non-fanciful possibility that plaintiff can state a claim under California law against

4   the non-diverse defendants the court must remand."  Macey v. Allstate Property and Cas. Ins.

5   Co., 220 F.Supp.2d 1116, 1117 (N.D.Cal. 2002).

6   C.      Analysis

7          Defendants assert that there is no reasonable basis for imposing liability against Zimmer-

8   Cook under California law.  Defendants contend that Zimmer-Cook is fraudulently joined in this

9   action to defeat diversity.  Defendants argue that a service provider, such as Zimmer-Cook,

10  cannot be held liable under California law and that the learned intermediary doctrine precludes

11  Plaintiffs from stating a claim against Defendant Zimmer-Cook.

12         Plaintiffs, citizens of California, move for remand to state court based on a lack of

13  diversity jurisdiction because Defendant Zimmer-Cook is a legitimate defendant with its place of

14  business in California.  Plaintiffs contend that Zimmer-Cook is a distributor of Zimmer products

15  and it is well settled under California law that distributors are proper defendants in products

16  liability cases.  See, e.g., Bostick v. Flex Equip. Co., Inc., 147 Cal.App.4th 80, 88-89, 54

17  Cal.Rptr.3d 28, 34-35 (2007) (doctrine of strict products liability imposes strict liability in tort on

18  all of the participants in the chain of distribution of a defective product; noting extension of strict

19  liability for a defective product to retailers); Arena v. Owens-Corning Fiberglas Corp., 63

20  Cal.App.4th 1178, 1193, 74 Cal.Rptr.2d 580, 590 (1998) (concluding that defendants who are

21  within the same chain of distribution of a single product remain jointly and severally liable to the

22  plaintiff for the harm caused by that product).

23         To support their argument, Plaintiffs rely, in part, on Becraft v. Ethicon, 2000 WL

24  1721056 (N.D.Cal. Nov. 2, 2000), which involved allegations of injuries from contaminated

25  sutures.  Defendant Ethicon removed the cases to federal court asserting diversity of citizenship

26  and arguing that its California distributors were fraudulently joined.  The plaintiffs moved to

27  remand their complaints to state court.  The court found that the plaintiffs had alleged receiving

28  sutures delivered by one of Ethicon's California distributors and, based on the pleadings alone,

1    the plaintiffs had stated a claim against the distributors.  Id. at *2.  The court noted that defendant

2    Ethicon did not deny that under California product liability law, a plaintiff can recover from the

3    distributor of a defective product, and not just the product's manufacturer.  Id.

4        Here, Plaintiffs allege in their complaint that Zimmer-Cook "distributed and placed into

5    the stream of commerce the [Durom Cup] through ...Roger Probasco."  Complaint, ¶ ¶ 3 and 8,

6    11, 14, 15 and 17.  In their fifth cause of action for strict product liability, Plaintiffs re-allege and

7    incorporate by reference their prior allegations and further allege that at the time the Durom Cup

8    was manufactured and sold it contained a defect in design and/or manufacture.  Complaint, ¶ 62.

9    Plaintiffs also allege that Roger Probasco, a Zimmer-Cook representative, accompanied Dr.

10   Grimes during the surgical implantation of the Durom Cup into Plaintiff Kathleen Lyles.

11   Complaint, ¶ 65.  Consistent with Becraft, and based on the pleadings alone, Plaintiffs have

12   stated a claim against Zimmer-Cook as a distributor.

13       Defendants disagree and attempt to distinguish Becraft as involving a defendant

14   manufacturer that did not deny the possibility of distributor liability.  Defendants also contend

15   that Becraft was not a nuanced decision relative to the defendant distributors.  In this case,

16   Defendants explain that California recognizes three types of product defects that may give rise to

17   strict liability: (1) a flaw in the manufacturing process, resulting in a product that differs from the

18   manufacturer's intended result (manufacturing defect); (2) products that are "perfectly" made but

19   are nevertheless unsafe because of some flaw in the product's design (design defect); and (3) a

20   product that is dangerous because it lacks adequate warnings or instructions.  Brown v. Superior

21   Court, 44 Cal.3d 1049, 1056 (1988).  Defendants argue that because Zimmer-Cook was not

22   involved in the design or manufacture of the Durom Cup, Zimmer-Cook cannot be held strictly

23   liable for any alleged design or manufacturing defects and, thus, Plaintiffs' strict liability claim

24   against Zimmer-Cook can be based only on a failure to warn theory.

25       Defendants contend that strict liability for failure to warn "is conditioned on the actual or

26   constructive knowledge of the risk by the manufacturer as of the time the product was sold or

27   distributed."  Brown, 44 Cal.3d at 1065-66.  Applying Brown, Defendants assert that imposing

28   strict liability for failure to warn against a mere service provider like Zimmer-Cook would violate

1    the rule that such liability may not be imposed against one who neither knew nor had reason to

2    know of an alleged risk.  Defendants claim that although Plaintiffs allege Zimmer-Cook is

3    strictly liable because Mr. Probasco was present at Kathleen Lyle's surgery to "ensure that the

4    Durom [Cup] was being used for the purpose for which it was intended," Zimmer-Cook and Mr.

5    Probasco "merely facilitated the delivery of the Durom Cup" and played no role in developing

6    the labeling, warnings or instructions that accompanied it and Probasco did not warn or instruct

7    Dr. Grimes in any way.  Complaint, ¶ 65; Cook Aff., ¶ 5, 8, 10; Probasco Aff., ¶ 9.  Defendants

8    further assert that the learned intermediary doctrine shields Zimmer-Cook from strict liability

9    because the duty to warn of risks associated with medical devices runs from the manufacturer to

10   the physician and service providers owe no duty to patients or their physicians.  Brown, 44

11   Cal.3d at 1061-62 n.9; Skinner v. Warner-Lambert Co., 2003 WL 25598915, *1 (C.D.Cal. April

12   28, 2003) (finding distributor of FDA-approved medication to pharmacists not subject to strict

13   liability).

14          Defendants further rely on Murphy v. E.R. Squibb & Sons, Inc., 40 Cal.3d 672, 680-81

15   (1985), which declined to extend the doctrine of strict liability to a pharmacy dispensing a

16   prescription drug.  Defendants attempt to liken Zimmer-Cook to a pharmacist who dispenses a

17   prescription drug and is furnishing a service, pointing to the Murphy court's finding that

18          [a] key factor is that the pharmacist who fills a prescription is in a different
            position from the ordinary retailer because he cannot offer a prescription for sale
19          except by order of the doctor.  In this respect, he is providing a service to the
            doctor and acting as an extension of the doctor in the same sense as a technician
20          who takes an X-ray or analyzes a blood sample on a doctor's order.

21   Id. at 679.

22          In short, Defendants contend that Plaintiffs cannot maintain their claims against Zimmer-

23   Cook because the principles that the California Supreme Court relied upon to explain liability for

24   drug manufacturers in Brown and to create an exception in strict liability for pharmacists in

25   prescription drug cases apply to prevent recovery against distributors in products liability cases

26   involving implanted medical devices.  However, neither party has cited a case under California

27   law that creates an exception in strict liability for distributors in implanted medical device cases.

28   See Maher v. Novartis, 2007 WL 2330713, *1, 5 (S.D.Cal. Aug. 13, 2007) (noting absence of

1  cited case under California law creating an exception in strict liability for distributors in

2  prescription drug cases); Cf. Skinner, 2003 WL 25598915, at *1 (distributor of a prescription

3  drug is not subject to strict liability).  As noted, under California law, both a manufacturer and a

4  distributor can be strictly liable for injuries caused by a defective product.  Bostick, 147

5  Cal.App.4th at 88-89; Arena, 63 Cal.App.4th at 1193; see also Vandermark v. Ford Motor Co.,

6  391 P.2d 168, 171 (Cal. 1964) (automotive dealer).  Brown has not foreclosed strict liability for

7  manufacturing defects or distribution of a product with a manufacturing defect.[2]  See, e.g.,

8  Artiglio v. Superior Court, 22 Cal.App.4th 1388, 1393) (discussing Brown's prescription drug

9  exception to general products strict liability for defective design, but noting that strict liability

10 would continue to apply for manufacturing defect and failure to warn of known or reasonably

11 knowable risks).  Further, the Murphy court's finding is limited to a pharmacist engaged in "a

12 hybrid enterprise, combining the performance of services and the sale of prescription drugs," and

13 not a distributor of implanted medical devices.  Murphy, 40 Cal.3d at 678.

14        Based on the above, there is no indication that Plaintiffs cannot state a claim against

15 Zimmer-Cook.  Therefore, Plaintiff's Motion to Remand is GRANTED and this action is

16 REMANDED to the Kern County Superior Court.

17 D.    Costs

18        Plaintiffs have moved to recover the costs incurred in defending against removal.

19 Plaintiffs cite 28 U.S.C. § 1447(c), which provides that a district court may award costs and

20 expenses, including attorney's fees, if the court remands a case to state court.  The award of

21 attorney's fees under section 1447(c) is left to the district court's discretion and may be awarded

22 only where the removing party lacked an objectively reasonable basis for seeking removal.

23 Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005) ("Absent unusual circumstances,

24 courts may award attorney's fees under § 1447(c) only where the removing party lacked an

25 _____

26        [2]This understanding is supported by the Restatement (Third) of Torts: Product Liability, discussing a
   section analogous to § 402A of the Restatement (Second) of Torts.  The Restatement (Third) provides that a retail
27 seller or other distributor of a prescription drug or medical device is subject to liability for harm caused by the drug
   or device if, at the time of sale or other distribution, the drug or medical device contains a manufacturing defect.
28 Rest. (3d) Torts: Prod. Liab. § 6.

1   objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable

2   basis exists, fees should be denied").

3        The California Supreme Court has not spoken on the issue of distributor liability in the

4   present context.  As such, Zimmer had a reasonable basis for arguing that Plaintiffs cannot

5   impose liability against Zimmer-Cook under California law.  Plaintiffs' request for costs is

6   DENIED.

7                                    **<u>ORDER</u>**

8        Based on the above, Plaintiffs' Motion to Remand is GRANTED.  This action is

9   REMANDED to the Kern County Superior Court for all further proceedings.

10       It is FURTHER ORDERED that Plaintiffs' request for costs is DENIED.

11

12       IT IS SO ORDERED.

13   **Dated:**   **May 29, 2009**          **/s/ Dennis L. Beck**
                                    UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT C

1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

8

| | | |
|---|---|---|
| JUDITH HINDS, | ) | 1:09cv0442 AWI DLB |
| | ) | |
| | ) | ORDER GRANTING PLAINTIFF'S |
| Plaintiff, | ) | MOTION TO REMAND ACTION |
| | ) | (Document 9) |
| v. | ) | |
| | ) | |
| ZIMMER, INC., et al., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

16
17

On April 7, 2009, Plaintiff Judith Hinds ("Plaintiff") filed the instant Motion to Remand to State Court.  The matter was heard on May 8, 2009, before the Honorable Dennis L. Beck, United States Magistrate Judge.  Matthew Faulkner appeared on behalf of Plaintiff.  Michelle Fujimoto appeared telephonically on behalf of Defendants Zimmer, Inc. ("Zimmer") and Zimmer-Cook Associates, Inc. ("Zimmer-Cook").

## **BACKGROUND**

Plaintiff filed this product liability action against Zimmer, Inc. ("Zimmer") and Zimmer-Cook Associates, Inc. ("Zimmer-Cook" or "Cook") in the Kern County Superior Court on December 23, 2008.  Plaintiff alleges negligence, *res ipsa loquitur*, breach of express and implied warranties and strict product liability for injuries she suffered after undergoing a total hip replacement on December 26, 2006, using the Durom Hip Resurfacing System manufactured by Zimmer.

1

1   Defendants Zimmer and Zimmer-Cook answered the complaint on March 9, 2009.

2   On March 9, 2009, Defendants removed the action to this Court based on complete

3   diversity of properly joined parties.  In the notice of removal, Defendants contend that Zimmer-

4   Cook is a sham defendant whose citizenship should be disregarded.  Defendants state that there is

5   no reasonable basis for imposing liability against Zimmer-Cook.

6   Plaintiff filed the instant motion for remand on April 7, 2009, arguing that Zimmer-Cook

7   is a distributor of the Durom Cup and is properly named under California tort law.[1]  Plaintiff also

8   requests costs and attorneys's fees in the amount of $3,000.00 for defending against removal.

9   Defendants opposed the motion on April 24, 2009.  Plaintiff filed her reply on April 28,

10  2009. On May 1, 2009, Defendants filed objections to evidence offered by Plaintiff in her reply.

11  **FACTUAL BACKGROUND**

12  According to the complaint, Zimmer is a Delaware corporation with its principal place of

13  business in Indiana.  Zimmer-Cook is a domestic corporation in California with its principal

14  place of business in San Francisco.  Plaintiff resides in Kern County, California.

15  Plaintiff underwent hip replacement surgery on December 26, 2006.  Dr. James Grimes

16  implanted the Durom Hip Resurfacing System ("Durom Cup").  Plaintiff alleges that Zimmer

17  manufactured the Durom Cup and that Zimmer-Cook distributed, supplied and sold the Durom

18  Cup.  During the surgery, Roger Probasco, a sales representative of Zimmer-Cook, was present

19  "to assure proper placement and implantation techniques of the [Durom Cup]."  Complaint, ¶ 19.

20  Following the surgery, Plaintiff had persistent pain in her groin for over a year after the

21  implant surgery.  Dr. Grimes diagnosed Plaintiff with a failed left total hip arthroplasty, which

22  required a revision left total hip arthroplasty.  On July 15, 2008, Plaintiff underwent a revision of

23  left total hip arthroplasty.  Plaintiff alleges that as a direct and proximate result of Defendants

24  Zimmer and Zimmer-Cook placing the defective product into the stream of commerce, she

25  suffered and continues to suffer injuries and damages.

26  Plaintiff asserts causes of action against Defendants for (1) negligence (failure to warn);

27

28  [1]A related motion to remand is pending in <u>Lyles v. Zimmer, Inc.</u>, 1:09cv0479 OWW DLB.

1   (2) *res ipsa loquitur*; (3) breach of express warranty; (4) breach of implied warranty; and (5)

2   strict product liability.

3                                **DISCUSSION**

4        Defendants argue that Plaintiff fraudulently joined Zimmer-Cook to destroy diversity and

5   that Zimmer-Cook is simply a service provider that facilitated the delivery of the Durom Cup to

6   Dr. Grimes.  Plaintiff counters that Zimmer-Cook is a distributor of the Durom Cup and

7   distributors are proper defendants in products liability cases.

8   A.     Removal Jurisdiction

9        By statute "any civil action brought in a State court of which the district courts of the

10   United States have original jurisdiction, may be removed by the defendant or the defendants, to

11   the district court of the United States for the district and division embracing the place where such

12   action is pending." 28 U.S.C. § 1441(a).  The party seeking to invoke federal jurisdiction bears

13   the burden of establishing jurisdiction.  See Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090,

14   1092 (9th Cir. 1990).

15   B.     Fraudulent Joinder

16        "The joinder of a nondiverse defendant is fraudulent or a 'sham' and does not defeat

17   jurisdiction if the plaintiff fails to state a cause of action against the defendant, and the failure is

18   obvious according to the settled rules of the state." Soo v. United Parcel Serv., Inc., 73 F.Supp.2d

19   1126, 1128 (N.D.Cal. 1999) (citing McCabe v. General Foods Corp., 811 F.2d 1336, 1339 (9th

20   Cir. 1987) ("fraudulent joinder is a term of art")); see Ritchey v. Upjohn Drug Co., 139 F.3d

21   1313, 1318 (9th Cir. 1998) (noting that a defendant must show that "the individuals joined in the

22   action cannot be liable on any theory" or that the resident defendant had "no real connection with

23   the controversy"), cert. denied, 525 U.S. 963 (1998).

24        A party is deemed to have been joined fraudulently if, "after all disputed questions of fact

25   and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff

26   could not possibly recover against the party whose joinder is questioned." Kalawe v. KFC Nat'l

27   Management Co., 1991 WL 338566, *2 (D.Haw. 1991) (citing Kruso v. International Telephone

28   & Telegraph Corp., 872 F.2d 1416, 1426 (9th Cir. 1989), cert. denied, 496 U.S. 937 (1990)).  If a

1    defendant claims that other defendants were fraudulently joined, then the court may go beyond

2    the pleadings to examine facts showing the joinder is fraudulent.  See Ritchey, 139 F.3d at 1318.

3    "If there is a non-fanciful possibility that plaintiff can state a claim under California law against

4    the non-diverse defendants the court must remand."  Macey v. Allstate Property and Cas. Ins.

5    Co., 220 F.Supp.2d 1116, 1117 (N.D.Cal. 2002).

6    C.    Analysis

7         Defendants assert that there is no reasonable basis for imposing liability against Zimmer-

8    Cook under California law.  Defendants contend that Zimmer-Cook is fraudulently joined in this

9    action to defeat diversity.  Defendants argue that a service provider, such as Zimmer-Cook,

10   cannot be held liable under California law and that the learned intermediary doctrine precludes

11   Plaintiff from stating a claim against Defendant Zimmer-Cook.

12        Plaintiff, a citizen of California, moves for remand to state court based on a lack of

13   diversity jurisdiction because Defendant Zimmer-Cook is a legitimate defendant with its place of

14   business in California.  Plaintiff contends that Zimmer-Cook is a distributor of Zimmer products

15   and it is well settled under California law that distributors are proper defendants in products

16   liability cases.  See, e.g., Bostick v. Flex Equip. Co., Inc., 147 Cal.App.4th 80, 88-89, 54

17   Cal.Rptr.3d 28, 34-35 (2007) (doctrine of strict products liability imposes strict liability in tort on

18   all of the participants in the chain of distribution of a defective product; noting extension of strict

19   liability for a defective product to retailers); Arena v. Owens-Corning Fiberglas Corp., 63

20   Cal.App.4th 1178, 1193, 74 Cal.Rptr.2d 580, 590 (1998) (concluding that defendants who are

21   within the same chain of distribution of a single product remain jointly and severally liable to the

22   plaintiff for the harm caused by that product).

23        To support her argument, Plaintiff relies, in part, on Becraft v. Ethicon, 2000 WL

24   1721056 (N.D.Cal. Nov. 2, 2000), which involved allegations of injuries from contaminated

25   sutures.  Defendant Ethicon removed the cases to federal court asserting diversity of citizenship

26   and arguing that its California distributors were fraudulently joined.  The plaintiffs moved to

27   remand their complaints to state court.  The court found that the plaintiffs had alleged receiving

28   sutures delivered by one of Ethicon's California distributors and, based on the pleadings alone,

1   the plaintiffs had stated a claim against the distributors.  Id. at *2.  The court noted that defendant

2   Ethicon did not deny that under California product liability law, a plaintiff can recover from the

3   distributor of a defective product, and not just the product's manufacturer.  Id.

4        Plaintiff alleges that Zimmer-Cook "distributed and placed into the stream of commerce

5   the [Durom Cup] through ...Roger Probasco."  Complaint, ¶ ¶ 3 and 8, 11, 14, 15 and 17.  In the

6   fifth cause of action for strict product liability, Plaintiff re-alleges and incorporates by reference

7   the prior allegations and further alleges that at the time the Durom Cup was manufactured and

8   sold it contained a defect in design and/or manufacture.  Complaint, ¶ 64.  Plaintiff also alleges

9   that Roger Probasco, a Zimmer-Cook representative, accompanied Dr. Grimes during the

10  surgical implantation of the Durom Cup into Plaintiff Judith Hinds.  Complaint, ¶ 67.  Consistent

11  with Becraft, and based on the pleadings alone, Plaintiff has stated a claim against Zimmer-Cook

12  as a distributor.

13       Defendants disagree and attempt to distinguish Becraft as involving a defendant

14  manufacturer that did not deny the possibility of distributor liability.  Defendants also contend

15  that Becraft was not a nuanced decision relative to the defendant distributors.  In this case,

16  Defendants explain that California recognizes three types of product defects that may give rise to

17  strict liability: (1) a flaw in the manufacturing process, resulting in a product that differs from the

18  manufacturer's intended result (manufacturing defect); (2) products that are "perfectly" made but

19  are nevertheless unsafe because of some flaw in the product's design (design defect); and (3) a

20  product that is dangerous because it lacks adequate warnings or instructions.  Brown v. Superior

21  Court, 44 Cal.3d 1049, 1056 (1988).  Defendants argue that because Zimmer-Cook was not

22  involved in the design or manufacture of the Durom Cup, Zimmer-Cook cannot be held strictly

23  liable for any alleged design or manufacturing defects and, thus, Plaintiff's strict liability claim

24  against Zimmer-Cook can be based only on a failure to warn theory.

25       Defendants contend that strict liability for failure to warn "is conditioned on the actual or

26  constructive knowledge of the risk by the manufacturer as of the time the product was sold or

27  distributed."  Brown, 44 Cal.3d at 1065-66.  Applying Brown, Defendants assert that imposing

28  strict liability for failure to warn against a mere service provider like Zimmer-Cook would violate

1   the rule that such liability may not be imposed against one who neither knew nor had reason to

2   know of an alleged risk.  Defendants claim that although Plaintiff alleges Zimmer-Cook is

3   strictly liable because Mr. Probasco was present at Plaintiff's surgery to "ensure that the Durom

4   [Cup] was being used for the purpose for which it was intended," Zimmer-Cook and Probasco

5   "merely facilitated the delivery of the Durom Cup" and played no role in developing the labeling,

6   warnings or instructions that accompanied and Probasco did not warn or instruct Dr. Grimes in

7   any way.  Complaint, ¶ 67. Cook Aff., ¶ 5, 8, 10; Probasco Aff., ¶ 9.

8        Defendants further assert that the learned intermediary doctrine shields Zimmer-Cook

9   from strict liability because the duty to warn of risks associated with medical devices runs from

10  the manufacturer to the physician and service providers owe no duty to patients or their

11  physicians.  Brown, 44 Cal.3d at 1061-62 n.9; Skinner v. Warner-Lambert Co., 2003 WL

12  25598915, *1 (C.D.Cal. April 28, 2003) (finding distributor of FDA-approved medication to

13  pharmacists not subject to strict liability).

14       Defendants also rely on Murphy v. E.R. Squibb & Sons, Inc., 40 Cal.3d 672, 680-81

15  (1985), which declined to extend the doctrine of strict liability to a pharmacy dispensing a

16  prescription drug.  Defendants attempt to liken Zimmer-Cook to a pharmacist who dispenses a

17  prescription drug and is furnishing a service, pointing to the Murphy court's finding that

18       [a] key factor is that the pharmacist who fills a prescription is in a different
         position from the ordinary retailer because he cannot offer a prescription for sale
19       except by order of the doctor.  In this respect, he is providing a service to the
         doctor and acting as an extension of the doctor in the same sense as a technician
20       who takes an X-ray or analyzes a blood sample on a doctor's order.

21  Id. at 679.

22       In short, Defendants contend that Plaintiff cannot maintain her claims against Zimmer-

23  Cook because the principles that the California Supreme Court relied upon to explain liability for

24  drug manufacturers in Brown and to create an exception in strict liability for pharmacists in

25  prescription drug cases apply to prevent recovery against distributors in products liability cases

26  involving implanted medical devices.  However, neither party has cited a case under California

27  law that creates an exception in strict liability for distributors in implanted medical device cases.

28  See Maher v. Novartis, 2007 WL 2330713, *1, 5 (S.D.Cal. Aug. 13, 2007) (noting absence of

1   cited case under California law creating an exception in strict liability for distributors in

2   prescription drug cases); Cf. Skinner, 2003 WL 25598915, at *1 (distributor of a prescription

3   drug is not subject to strict liability).  As noted, under California law, both a manufacturer and a

4   distributor can be strictly liable for injuries caused by a defective product.  Bostick, 147

5   Cal.App.4th at 88-89; Arena, 63 Cal.App.4th at 1193; see also Vandermark v. Ford Motor Co.,

6   391 P.2d 168, 171 (Cal. 1964) (automotive dealer).  Brown has not foreclosed strict liability for

7   manufacturing defects or distribution of a product with a manufacturing defect.[2]  See, e.g.,

8   Artiglio v. Superior Court, 22 Cal.App.4th 1388, 1393) (discussing Brown's prescription drug

9   exception to general products strict liability for defective design, but noting that strict liability

10  would continue to apply for manufacturing defect and failure to warn of known or reasonably

11  knowable risks).  Further, the Murphy court's finding is limited to a pharmacist engaged in "a

12  hybrid enterprise, combining the performance of services and the sale of prescription drugs," and

13  not a distributor of implanted medical devices.  Murphy, 40 Cal.3d at 678.

14          Based on the above, there is no indication that Plaintiff cannot state a claim against

15  Zimmer-Cook.  Therefore, Plaintiff's Motion to Remand is GRANTED and this action is

16  REMANDED to the Kern County Superior Court.

17  D.      Costs

18          Plaintiff has moved to recover the costs incurred in defending against removal.  Plaintiff

19  cites 28 U.S.C. § 1447(c), which provides that a district court may award costs and expenses,

20  including attorney's fees, if the court remands a case to state court.  The award of attorney's fees

21  under section 1447(c) is left to the district court's discretion and may be awarded only where the

22  removing party lacked an objectively reasonable basis for seeking removal.  Martin v. Franklin

23  Capital Corp., 546 U.S. 132, 141 (2005) ("Absent unusual circumstances, courts may award

24  attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable

25

26          [2]This understanding is supported by the Restatement (Third) of Torts: Product Liability, discussing a
    section analogous to § 402A of the Restatement (Second) of Torts.  The Restatement (Third) provides that a retail

27  seller or other distributor of a prescription drug or medical device is subject to liability for harm caused by the drug
    or device if, at the time of sale or other distribution, the drug or medical device contains a manufacturing defect.

28  Rest. (3d) Torts: Prod. Liab. § 6.

basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied").

The California Supreme Court has not spoken on the issue of distributor liability in the present context.  As such, Zimmer had a reasonable basis for arguing that Plaintiff cannot impose liability against Zimmer-Cook under California law.  Plaintiff's request for costs is DENIED.

## ORDER

Based on the above, Plaintiff's Motion to Remand is GRANTED.  This action is REMANDED to the Kern County Superior Court for all further proceedings.

It is FURTHER ORDERED that Plaintiff's request for costs is DENIED.


IT IS SO ORDERED.

**Dated:   May 29, 2009**         **/s/ Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2009 MAY 21  PM 4: 39

CLERK ... DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
DEPUTY

| | | |
|---|---|---|
| ALLEN RICKMAN, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CAUSE NO. A-08-CA-860-LY |
| | § | |
| ZIMMER US, INC. A/K/A ZIMMER | § | |
| MANUFACTURING COMPANY A/K/A | § | |
| ZIMMER, INC., AND ZIMMER | § | |
| WILSON/PHILLIPS, | § | |
| DEFENDANTS. | § | |

## ORDER

Before the Court in the above styled and numbered cause are Plaintiff Allen Rickman's

Amended Motion For Leave To File Amended Complaint filed December 18, 2008 (Clerk's

Document No. 15), Plaintiff's Motion To Remand filed December 17, 2008 (Clerk's Document No.

13), and Defendants Zimmer US, Inc. and Zimmer Wilson/Phillips's Opposition To Motions To

Remand And For Leave To File Amended Complaint filed May 11, 2009 (Clerk's Document No.

32).[1] Having considered the motions, the response, the pleadings, the file, and the applicable law,

the Court is of the opinion that the motions should be granted and the cause remanded to state court.

Rickman commenced this action on October 17, 2008, in the 126th District Court of Travis

County, Texas alleging state-law claims and damages arising from his October 16, 2006, total hip

replacement with a Zimmer Metasul hip with a component known as the Durom Acetabular Cup,

a medical device manufactured and placed into the stream of commerce by Defendant Zimmer US,

---

[1] After Rickman filed the motions, the parties requested and the Court ordered a stay of proceedings to allow the parties an opportunity to settle their dispute (Clerk's Document No. 26). The parties informed the Court that they were unable to reach a settlement, and on April 27, 2009, the Court ordered the stay lifted and allowed Defendants to file responses to Rickman's motions (Clerk's Document No. 31).

Inc., a Delaware corporation, and also distributed and placed into the stream of commerce by Zimmer Wilson/Phillips, a Texas corporation with its principal place of business in Richardson, Texas. Rickman alleges that the replacement failed, that the hip and cup component was loose, and therefore was not functional, which caused Rickman severe and debilitating pain, discomfort, and impairment. Rickman alleges that, based on the discovery rule, his causes of action arose in October 2008, which is when he received the first diagnosis that the hip replacement device failed. On November 21, 2008, Defendant Zimmer US, Inc., removed the cause to this Court based on diversity jurisdiction, contending that despite the lack of complete diversity on the face of the Complaint, removal is proper because Zimmer Wilson/Phillips is improperly joined (Clerk's Document No 1). *See* 28 U.S.C. §§ 1332, 1441.

After removal, Rickman moves this Court for leave to file an Amended Complaint by which he seeks to join additional defendants Zimmer Nagel, Ltd. and its general partner Zimmer Associates, Inc., ("Zimmer Nagel") both Texas entities with their principal place of business in San Antonio, Texas, and to clarify his cause of action alleged against Zimmer Wilson/Phillips. By his motion to amend, Rickman alleges that by way of Defendant Zimmer US, Inc.'s Notice of Removal, Rickman learned that Zimmer Wilson/Phillips began distributing the medical device at issue in Travis County, Texas in May 2007, which was seven months after Rickman's hip replacement. Rickman moves the Court to allow him to plead causes of action against both the distributor that allegedly sold and made express representations about the device at the time Rickman received his hip replacement, which he now believes is Zimmer Nagel, and Zimmer Wilson/Phillips, the distributor that later allegedly gave his physician information and made representations about the functionality of the implanted medical device. Specifically, Rickman seeks to add claims against

2

Zimmer Nagel for breach of warranty and misrepresentation. Rickman also challenges the removal contending that as Zimmer Wilson/Phillips was not fraudulently joined or named as a Defendant merely for the purpose of defeating diversity, Zimmer Wilson/Phillips consent to removal was necessary. Additionally, Rickman moves for remand of the action to state court, contending that he has viable causes of action against the nondiverse Defendants Zimmer Wilson/Phillips and Zimmer Nagel.

Defendants oppose both of Rickman's motions contending: (1) that Zimmer Wilson/Phillips is fraudulently joined, therefore its presence in the action fails to infringe on this Court's diversity jurisdiction; and (2) Rickman's request for leave to amend his pleadings to add Zimmer Nagel is futile because lacking is any colorable claim against Zimmer Nagel, and Rickman will not be significantly injured if the amendment is denied.

### Motion for leave to file amended complaint

"[A] party may amend its pleading only with the opposing party's written consent or the court's leave" and "the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). Whether a motion to amend should be granted is within the discretion of the district court. *Id.* at 182. When exercising its discretion, the court may consider such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Overseas Inns S.A.P.A. v. United States*, 911 F.2d 1146, 1150-51 (5th Cir. 1990) (quoting *Foman*, 371 U.S. at 182); *see also Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). In such

3

a situation, the court balances the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits. *Hensgens*, 833 F.2d at 1182.

The Court finds that absent is any indication that Rickman seeks to join Zimmer Nagel solely to defeat diversity. Further, less than one month passed from the time Defendants removed the action to this Court until Rickman sought leave to amend the Complaint to add claims against the recently discovered nondiverse party, Zimmer Nagel, and moved to remand the action to state court. The Court finds lacking any dilatory conduct by Rickman in seeking to amend the Complaint and that the equities weigh in favor of allowing Rickman to file the Amended Complaint. The Court will grant Rickman's motion for leave to file the Amended Complaint.

### *Motion to remand cause to state court*

Rickman moves to remand this cause to state court maintaining that Zimmer Wilson/Phillips was properly joined, thus, the Court lacks diversity jurisdiction and contending that removal was improper as lacking is any proof that Zimmer Wilson/Phillips consented to removal. In light, however, of the Court's determination to allow Rickman to file an Amended Complaint, which includes claims alleged against a second nondiverse Defendant, Zimmer Nagel, and assuming without deciding that Zimmer Wilson/Phillips was improperly joined, the Court considers Defendants' arguments that joinder of Zimmer Nagel should be disallowed as Rickman lacks a colorable claim against Zimmer Nagel under Texas law.

If after removal plaintiff seeks to join additional defendants whose joinder would destroy subject-matter jurisdiction, the court may deny joinder or permit joinder and remand the action to state court. *See* 28 U.S.C. § 1447(e); *Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 677 (5th Cir. 1999). This provision authorizes a court to permit or prohibit joinder, and provides the removing defendant

4

an opportunity at the time joinder is considered to argue that there is no colorable claim against the party plaintiff seeks to join. *Cobb*, 186 F.3d at 678.

Here, Defendants argue Rickman lacks a colorable claim against Zimmer Nagel and that Rickman's joinder request should be denied because Zimmer Nagel is not a seller, is not engaged in the business of selling Zimmer products, and did not owe Rickman a duty of care. In support of its contentions, Defendants refer the Court to *New Texas Auto Auction Services, L.P. v. Gomez De Hernandez*, 249 S.W.3d 400 (Tex. 2008). The Court finds *New Texas Auto Auction Services*, which addresses claims of strict liability and negligence, inapplicable to Rickman's breach of express warranty and misrepresentation claims alleged against Zimmer Nagel. The Court finds that Rickman has a colorable claim against Zimmer Nagel. Considering the Amended Complaint, the Court finds and concludes that diversity jurisdiction is lacking, the sole basis for removal of the action, and the Court will remand the cause to state court.

**IT IS ORDERED** that Plaintiff Allen Rickman's Amended Motion For Leave To File Amended Complaint filed December 18, 2008 (Clerk's Document No. 15) is **GRANTED**. The Clerk of Court shall file Rickman's Plaintiff's Amended Complaint.

**IT IS FURTHER ORDERED** that Plaintiff Allen Rickman's Motion To Remand filed December 17, 2008 (Clerk's Document No. 13) is **GRANTED**.

**IT IS FURTHER ORDERED** that this cause is hereby **REMANDED** to the 126th District Court of Travis County, Texas.

SIGNED this _____**21st**_____ day of May, 2009.

_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE

5

# EXHIBIT E



| **Our Organization** / United States | **Go to**  |



Zimmer Cook

Careers

Contact Us

Our Organization Home

Zimmer.com

## Welcome to Zimmer Cook

The shape of things to come. From the cells in their bodies to their taste in clothes, women are different than men. Learn about the first knee replacement shaped to fit a woman's anatomy.
More

**Related Links:**
Gender Solutions High-Flex Knee
3 Important Differences



Search Zimmer for:

[                    ] Go

A⁻ Text smaller
A⁺ Text larger

Print-friendly

Share

---

### The Zimmer Institute

Founded in March 2003, the Zimmer Institute is Zimmer's premier center for surgeon training on minimally invasive procedures.
More

**Related Links:**
Online Registration



---

### M/L Taper with Kinectiv Technology

The M/L Taper with Kinectiv Technology allows the surgeon to fit the implant to the patient. A system of modular stem and neck components designed to help the surgeon restore the natural hip joint center intraoperatively by addressing leg length, offset, and version independently. More

**Related Links:**
M/L Taper with Kinectiv Hip Overview
Design Considerations
Built on Proven M/L Taper Hip Design Philosophy



---

### NexGen LPS-Flex Mobile Bearing Knee

The anterior pivot of the LPS-Flex Mobile Bearing Knee leads to less patellofemoral forces than central pivoting designs since it is more closely positioned to the tibial tubercle.
More

**Related Links:**



---

Privacy Notice | Legal Notice          Help | Last updated 1/7/05          © 2010 Zimmer, Inc. (owner of site) version 5.0

# EXHIBIT F





| Our Organization  / United States | Go to | Area of interest ▾ |

Zimmer Cook

Careers

Contact Us

Our Organization Home

Zimmer.com

## The Zimmer Institute

**Photos**

 

Search Zimmer for:

[            ] [Go]

A⁻ Text smaller
A⁺ Text larger

Print-friendly
Share

Founded in March 2003, the Zimmer Institute is Zimmer's premier center for surgeon training on minimally invasive procedures. The training environment, which includes both didactic and hands-on laboratory areas, encompasses approximately 15,000 square feet at Zimmer's world headquarters in Warsaw, Indiana.

Since its opening, the Zimmer Institute has hosted over 2,000 surgeons for training on procedures such as the $MIS^{TM}$ 2-Incision$^{TM}$ Hip Procedure, $MIS$ Quad-Sparing $^{TM}$ Knee Technique, $MIS$ Anterolateral Hip Technique, and $MIS$ procedures for Zimmer Spine products.



Zimmer has arrangements with prominent hospitals and teaching institutions to increase the opportunities for surgeon training and education as well as orthopaedic research and development. The Zimmer Institute in Warsaw represents the hub of a worldwide network dedicated to advancing Zimmer's $MIS$ procedures and technologies.

"The opening of the Zimmer Institute is a real milestone in the continuing evolution of our four-year old $MIS$ program," said Ray Elliott, Zimmer chairman, president and chief executive officer. "The Institute will support our goal of making the patient benefits of $MIS$ joint replacement broadly available, and it greatly expands the training effort and skills transfer."

The goals of minimally invasive joint replacement are to minimize blood loss during surgery, to shorten or nearly eliminate the associated hospital stay, to minimize the pain involved in rehabilitation, and to significantly shorten the time required for a patient to return to a normal lifestyle.

The Zimmer Institute will also serve as a home for the company's "O.R. of the Future" initiative and other development efforts that will serve to provide continued innovative ideas.

The Zimmer Institute is an integral part of the education and training for the physicians and the company considers the $MIS$ development program a priority and continues to invest in it's future.

The Institute offers surgeons the opportunity to learn the surgical procedure in a laboratory environment that closely simulates an operating room. In addition, the Institute employs advanced electronic training equipment and links to satellite facilities. Zimmer is in the process of finalizing agreements with a number of prominent hospitals and teaching institutions that will become part of a worldwide network offering Zimmer Institute courses.

Zimmer has established an Institute advisory panel, made up of prominent orthopaedic surgeons, to help guide the operation and expansion of the Institute's educational efforts. Aaron Rosenberg, M.D., Professor of Orthopaedic Surgery, Rush-Presbyterian-St. Luke's Medical Center, Chicago, chairs the advisory panel. "Because minimally invasive surgery represents a new approach to what is already a very successful procedure, it is important that the transfer of knowledge and skills is

just as effective as the design of the procedure and the instruments," Dr. Rosenberg said. "The Zimmer Institute represents a world-class educational effort that will provide surgeons an excellent basis for incorporating minimally invasive joint replacement into their practices."

Listed below are some of the *MIS* procedures and techniques taught at the Zimmer Institute:

MIS™ 2-Incision™ Hip Procedure
MIS Mini-Incision Hip Procedure
MIS Quad-Sparing™ Total Knee Procedure
MIS Mini-Incision Knee Procedure
MIS Partial Knee Procedure


Read about *MIS* Procedures

Privacy Notice | Legal Notice     Help | Last updated 7/18/08                    © 2010 Zimmer, Inc. (owner of site) version 5.0

# EXHIBIT G

Zimmer

| Our Organization / United States

| Go to  Area of interest ▼

Our Organization Home

Zimmer.com

## Patient Education Materials

This form is intended for Patients or Caregivers to request free information. The requestor will receive one each of whatever information is requested.

Search Zimmer for:

⌂ Go

A⁻ Text smaller
A⁺ Text larger

▢ Share

**Contact**

Phone:  For Gender Solutions High-Flex Knee information, call 1-877-GEN-KNEE.
For MIS information, call 1-800-HIP-KNEE.

You can request information by completing the following (* indicates required field):

First Name: *

Last Name: *

Street Address: *

City: *

State: *  Select state ▼

ZIP Code: *

E-mail: *

I would like information regarding: *

☐ Zimmer Gender Solutions Knee

☐ MIS Hip Procedures

☐ MIS Knee Procedures

☐ NexGen High-Flex Knee Replacement

☐ Partial Knee Replacement

How did you find out about our site?

○ Internet
○ Friend
○ Magazine
○ Newspaper
○ Provider
○ Radio
○ TV
○ Other

submit

Privacy Notice | Legal Notice        Help | Last updated 7/22/03        © 2010 Zimmer, Inc. (owner of site) version 5.0

# EXHIBIT H



| News from Zimmer
10/28/2010: Zimmer Holdings, Inc. Reports
Third Quarter 2010 Financial Results... More



| Destination

United States / English ▼

**Please select the area you
would like to visit:**

○ Patient / Caregiver
○ Medical Professional
○ Investor Relations
○ Zimmer Corporate
○ Candidate / Careers

© 2010 Zimmer, Inc. (owner of site) version 5.0 | Privacy Notice | Legal Notice

Zimmer is a worldwide leader in joint replacement solutions for knee pain and hip pain, and provides comprehensive spine care solutions for acute and chronic back pain. The company also provides a broad range of trauma, dental implant, and orthopaedic surgical products. Founded in 1927, Zimmer is committed to providing effective techniques in hip replacement and knee replacement for orthopaedic surgeons who restore mobility and relieve the pain of osteoarthritis and traumatic injuries. Our minimally invasive hip and minimally invasive knee replacement systems and our wide range of related products and services make us valuable partners to health-care providers in more than 80 countries.

# EXHIBIT I



| **For the Medical Professional** / United States

| Go to    Area of interest ▾

MIS    CAS    Hip    Knee    Elbow    Shoulder    Spine    Trauma    Surgical    Dental



Choose state ▾  Go
or go to advanced search

Zimmer Institute

Corporate Compliance

Technology

Products / Instruments

Surgical Techniques

Product Brochures

Contact a Sales Associate

Clinical Research Library

Health Economics /
Reimbursement

Allergies

MRI

Contact Us

Medical Professional Home

## Distributor Profile

**Zimmer Cook Associates, Inc. (Orthopaedics and Spine)**

2200 Jerrold Avenue
Suite J
San Francisco , CA 94124

Phone: 415/241-7878
Fax: 415/241-7978
E-mail: Gary Cook ( zcook.sanfrancisco@zimmer.com )
Web site: http://www.zimmercook.com/

**Map It!**

**Try a New Search**

**Save as My Distributor**

Search Zimmer for:

Go

A⁻  **Text smaller**
A⁺  **Text larger**

🖨  **Print-friendly**
📧  **Share**

Privacy Notice | Legal Notice        Help | Last updated 1/16/03          © 2010 Zimmer, Inc. (owner of site) version 5.0